USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __7/22/2022__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
INDHIRA A FELIZ,                                    :
                                                    :
                    Plaintiff,                      :          **OPINION &**
                                                    :          **ORDER**
              -against-                             :
                                                    :          20-CV-9355 (JLC)
KILOLO KIJAKAZI,                                    :
Acting Commissioner,                                :
Social Security Administration,                     :
                                                    :
                    Defendant.                      :
-----------------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

Indhira A. Feliz seeks judicial review of a final determination by Kilolo
Kijakazi, the Acting Commissioner of the Social Security Administration, denying
her application for disability insurance benefits and supplemental security income
under the Social Security Act.  The parties have cross-moved for judgment on the
pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the
reasons set forth below, Feliz's motion is granted, the Commissioner's cross-motion
is denied, and the case is remanded for further proceedings.

## I. BACKGROUND

### A.  Procedural History

Feliz filed a Title II application for disability insurance benefits ("DIB") and
supplemental security income ("SSI") in April 2018 and filed a Title XVI application
for SSI in July 2018, with an alleged onset date of August 1, 2017.  Administrative

Record ("AR"), Dkt. No. 15, at 252–53, 292.[1]   The Social Security Administration

("SSA") denied Feliz's claims on June 20, 2018.  *Id.* at 81–86.  She subsequently

requested a hearing before an Administrative Law Judge ("ALJ") on July 3, 2018.

*Id.* at 87–88.  On September 25, 2019, Feliz, represented by counsel, appeared and

testified before ALJ Hilton R. Miller at a video hearing.  *Id.* at 35–65.[2]  In a decision

dated October 10, 2019, the ALJ found Feliz not disabled, and denied her claims.

*Id.* at 19–34.  Feliz sought review of the ALJ's decision by the Appeals Council,

which denied Feliz's request on September 28, 2020.  *Id.* at 1–8.

On January 6, 2022, Feliz timely commenced this action on November 9, 2020, seeking judicial

review of the Commissioner's decision pursuant to 42 U.S.C. §405(g).  Complaint,

Dkt. No. 1.  The Commissioner answered Feliz's complaint by filing the

administrative record on June 7, 2021.  Dkt. No. 15.

On January 6, 2022, Feliz moved for judgment on the pleadings and

submitted a memorandum of law in support of her motion.  Motion for Judgment on

the Pleadings, Dkt. No. 24; Memorandum of Law in Support of the Plaintiff's

Motion for Judgment on the Pleadings ("Pl. Mem."), Dkt. No. 25.  The Commissioner

cross-moved for judgment on the pleadings on April 5, 2022 and submitted a

---

[1] The page numbers refer to the sequential numbering of the Administrative Record provided on the bottom right corner of the page, not the numbers produced by the Electronic Case Filing ("ECF") System.

[2] The transcript for the ALJ hearing that appears in the record notes that Feliz and her counsel appeared at the hearing in person.  AR at 37.  This appears to be incorrect as Feliz's counsel stated during the hearing that he was in the Bronx.  *Id.* at 41.  In addition, the ALJ's decision states that he held a "video hearing."  *Id.* at 19.

memorandum in support of the cross-motion.  Notice of Cross-Motion for Judgment

on the Pleadings, Dkt. No. 28; Memorandum of Law in Support of Commissioner's

Cross-Motion for Judgment on the Pleadings and in Opposition to Plaintiff's Motion

for Judgment on the Pleadings ("Def. Mem."), Dkt. No. 29.  On April 27, 2022, Feliz

submitted reply papers.  Reply Brief  ("Pl. Reply"), Dkt. No. 30.

### B.  The Administrative Record

#### 1.  Feliz's Background

Feliz was born on June 7, 1969.  AR at 243.  At the time of the hearing, she

was 50 years old and appeared at the hearing from the Bronx, where she resides.

*Id.* at 1, 37.  She was born in Santo Domingo and came to the United States in 2000.

*Id.* at 46.  The highest grade she completed was ninth grade in the Dominican

Republic.  *Id.*  She does not read or write in English.  *Id.* at 47.  Upon arriving in the

United States, she worked in a factory and later a store.  *Id.*  She also worked as a

hair stylist from 2002 until August 2017, when she alleges that she stopped

working because she felt anxious, her shoulder bothered her, and she felt

uncomfortable around people, especially in the hair salon, where she often cried.  *Id.*

at 47, 254.  Feliz claims she is unable to work due to herniated discs, anxiety, and

attention deficit hyperactivity disorder.  *Id.* at 253.

#### 2.  Relevant Medical Evidence

Feliz has provided a summary of the medical evidence contained in the

administrative record.  *See* Pl. Mem. at 5–18.  The Commissioner has also provided

a summary of the medical evidence contained in the administrative record.  *See* Def.

Mem. at 2–13.  "The Court adopts these summaries, which do not materially conflict
with each other, as accurate and complete for the purpose of considering the issues
raised in this suit, except to the extent we discuss additional records below."
*Marinez v. Comm'r of Soc. Sec.*, 269 F. Supp. 3d 207, 210 (S.D.N.Y. 2017).

The Court will discuss the medical evidence pertinent to this case in Section
II(B) below.

### 3.  ALJ Hearing

The hearing was held in Jersey City, New Jersey on September 25, 2019.  AR
at 37.  Feliz appeared by video teleconference from the Bronx, represented by her
attorney, Jacques Farhi.  *Id.* at 19.  Interpreter Logun Christensen, Vocational
Expert ("VE") Irene Montgomery, and Medical Expert Dr. Arnold Ostrow were also
present by telephone.  *Id.*

In his opening remarks, Farhi stated that Feliz came to the United States at
the age of 31, that she has poor linguistic abilities, and that she is a U.S. citizen.
*Id.* at 38–39.  He explained that Feliz suffers from herniated discs and other
medical problems, including plantar fasciitis and Achilles tendonitis, and
psychiatric problems, including anxiety and attention disorder.  *Id.* at 39.  He also
noted that she had previously worked as a hairstylist.  *Id.*

After Farhi's opening remarks, the ALJ questioned Dr. Ostrow, an internal
medicine and pulmonary disease expert, who was retained by the government as an
impartial witness at the hearing.  *Id.* at 40.  Dr. Ostrow discussed the medically
determinable impairments identified in the file.  *Id.* at 42.  He testified that the

impairments were severe but that none of them met or equaled any of the Listings.

*Id.* Dr. Ostrow then offered his own residual functioning capacity ("RFC")

assessment. *Id.* at 43. He believed Feliz was capable of:

> lifting 20 pounds occasionally, 10 pounds frequently,
> stand and walk for six hours in an eight-hour day, sit for
> six hours in an eight-hour day. The upper extremities:
> The right upper extremity is not to be raised above the
> shoulder height, and only occasional push, pull or reach in
> all other directions, and that's on the right. No restriction
> on the left. Lower extremities: occasional foot pedals,
> bilaterally. Posturals are all occasional. Climb stairs
> occasionally. No ropes, no ladder, no scaffolding, and
> totally precluded from working at unprotected heights.

*Id.*

> Upon questioning by Farhi, Dr. Ostrow testified that

> the examining physician is in a much better position to
> evaluate the Claimant. However, I based my opinion on
> the objective medical records. And the limitations that
> those conditions place on this Claimant, I didn't agree
> with, and they did not document objectively how they
> arrived at such severe restrictions.

*Id.* at 44. The ALJ then asked Dr. Ostrow if he saw any objective basis for a cane

and Dr. Ostrow answered that he "saw no prescription issued by a physician, or

direction by a physician to use any ambulatory aid." *Id.* at 45–46.

Next, Feliz testified and was also questioned by Farhi. *Id.* at 46. She

testified that she could read and write in Spanish but not in English. *Id.* at 46–47.

Feliz testified that when she first got to the United States she worked in a factory,

and later a store, but that most of her time has been spent as a hairdresser. *Id.* at

47. She said that she intends to have knee surgery, has had an epidural injection,

and that she takes "a lot" of medication for pain. *Id.* at 47–48. She was present

with a cane, which she testified was given to her by her orthopedist, and she also wore a back brace. *Id*. at 48. She testified that she uses the cane for her knees and back, both in and out of the house, and mostly when she goes "down." *Id*. Feliz testified to taking a total of 10 medications, as well as using a cream. *Id*. at 48. She stated that her medication makes her "kind of hazy, kind of fuzzy," "down," and that her mouth gets very dry. *Id*. at 48–49. Feliz testified that she had an unsuccessful surgery on her eye, and that she has trouble seeing well out of that eye. *Id*. at 49.

Farhi asked Feliz how many hours a day she could spend sitting at a desk or table. *Id*. She testified that she could sit for approximately 15 minutes after which she has to stand. *Id*. He also asked her how many hours a day she could spend standing up behind a counter in a store, and she responded that she could last "maybe 15, 20 minutes." *Id*. at 50. She testified that she is unable to bend over and uses a device to help her pick things up or her two children help her. *Id*. She testified that she would have a lot of trouble reaching up to take a jar off a shelf, her shoulder would start "killing" her, and that she would have trouble opening the jar. *Id*. at 51.

The ALJ questioned Feliz regarding her English-speaking capabilities. *Id*. Feliz explained that over the course of her 20 years in the United States, she has taken three English courses where she was able to learn simple things, but that she cannot converse. *Id*. She testified that the reason she has not learned more English is because she cannot learn or remember things. *Id*. at 52. She testified that she

occasionally takes trains and buses, but usually takes taxis with the help of her

daughter or niece or she writes down where she needs to go. *Id.* at 51–52.

The ALJ then provided Farhi time to question Feliz regarding her mental

health issues. *Id.* at 53. She testified that the medications which she has been

prescribed by Dr. Raquel Choua make her "a little sleepy," causing her to be home

all day sleeping, and that they make her mouth dry. *Id.* at 55. She stated that she

gets flashbacks and anxiety attacks "almost always," but when she takes her

medications she feels better. *Id.* at 56.

Next, the ALJ questioned the VE, who testified that Feliz's past relevant

work as a hair stylist was skilled, light work. *Id.* The ALJ then presented a

hypothetical, inquiring about the employability of an individual with Feliz's

vocational profile who was

> limited to medium work that includes lifting and/or
> carrying up to 50 pounds occasionally, 25 pounds
> frequently, stand and/or walk with normal breaks for a
> total of about six hours in an eight hour work day, sit
> with normal breaks for a total of about six hours in an
> eight hour day, can occasionally climb ramps and stairs,
> no ladders, ropes or scaffolds; occasionally balance, kneel,
> crouch, stoop and crawl; does not require manipulation
> utilizing the bilateral lower extremity, such as foot
> pedals. No overhead reaching with the right upper
> extremity, frequent reaching in all other directions. Does
> not involve hazards such as dangerous machinery, motor
> vehicles, unprotected heights or vibrations. That also
> takes into account non-exertional limitations, allowing
> performance of simple, routine or repetitive tasks that
> could be explained. Specifically, Specific Vocational
> Preparation (SVP) 1 and 2, which involve simple
> decisions, and only occasional changes in routine and only
> occasional and superficial contact with others.

*Id.* at 56–57.  The VE testified the individual could work as a night cleaner, laundry laborer, and box maker, unskilled, SVP 2.  *Id.* at 57, 59.

The ALJ posed a second hypothetical to the VE: an individual with Feliz's vocational profile who was limited to

> light work, that involves lifting and carrying up to 20 pounds occasionally, 10 pounds frequently, stand and/or walk with normal breaks for a total of about six hours in an eight-hour work day, can occasionally climb ramps and stairs, no ladders, ropes, or scaffolds.  Occasional balancing, kneeling and crouching, squatting, and no crawling.  Does not require manipulation utilizing the bilateral lower extremities, such as foot controls or foot pedals.  No overhead reaching with the right upper extremity.  Frequent reaching in all other directions. Does not involve hazards such as dangerous machinery, motor vehicles, unprotected heights or vibrations.  That also takes into account non-exertional limitations, allowing performance of simple, routine, repetitive tasks that could be explained.  Specifically, SVPs 1 and 2, which involve making simple decisions, only occasional changes in routine and occasional and superficial contact with others.

*Id.* at 58.  The VE testified the individual could work as an inspector, such as of medical products, a collator, and a photocopy machine operator, light unskilled SVP 2.  *Id.* at 59.  The VE testified that the positions would still apply even with a sit-stand option and if ambulation with a cane were added.  *Id.*  The VE added that the individual would need fine visual acuity to do the job tasks.  *Id.* at 60.  The VE further testified that an individual would be precluded from full-time competitive employment if the individual is unable to bend, lift, or carry for one-third of the day; is unable to walk, stand, or sit for two hours out of an eight-hour day; takes rest breaks every two hours; has to alternate positions every 15 minutes; has limitations

8

which prevent her from ever being able to stoop or balance; or is off task greater than 10% of the time.  *Id*. at 62–65.  Additionally, the VE testified that two days per month absenteeism would not be tolerated for any such positions.  *Id*.

### 4.  The ALJ's Decision

The ALJ denied Feliz's application on October 10, 2019.  *Id*. at 30.  In doing so, he concluded that Feliz was not disabled under sections 216(i) and 223(d) of the Social Security Act from August 1, 2017, the alleged onset date, through October 10, 2019, the date of the decision.  *Id*.  The ALJ also concluded that Feliz was not disabled under section 1614(a)(3)(A) of the Social Security Act from July 19, 2018 through October 10, 2019, the date of the decision.  *Id*.

The ALJ followed the five-step test as set forth in the SSA regulations.  First, the ALJ found that Feliz met the insured status requirements of the Social Security Act through December 31, 2022 and that she had "not engaged in substantial gainful activity" since the alleged onset date.  *Id*. at 21–22.  At step two, the ALJ found that Feliz "has the following severe impairments: sciatica, right shoulder rotator cuff tears with arthritis, status-post medial meniscus tears of the knee, lumbar degenerative disc disease, osteoarthritis of the thoracic spine, obesity, and anxiety disorder."  *Id*. at 22.

At step three, the ALJ found that Feliz "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)."  *Id*.

9

Specifically, the ALJ considered Listings 1.00, 1.04, 1.02, 12.04, and 12.06. *Id.* at 22–23.

Prior to step four, the ALJ assessed Feliz's RFC. *Id.* at 24–28. He determined that Feliz's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and the other evidence in the record." *Id.* at 25. The ALJ concluded that Feliz had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that includes the ability to lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk and sit six hours each in an eight-hour workday with normal breaks, occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, occasionally balance, kneel, crouch and squat and never crawl, that does not require manipulation using the bilateral lower extremities, such as foot controls or pedals. The right hand dominant claimant can never reach overhead with the right upper extremity, but can frequently reach in all other directions. The claimant must avoid hazards, such as dangerous machinery, motor vehicles, unprotected heights or vibrations. The claimant can perform simple, routine and repetitive tasks, specifically SVP one or SVP two, with simple decisions and only occasional changes in routine and occasional and superficial contact with others.

*Id.* at 24. In coming to this conclusion, the ALJ considered Feliz's testimony from the hearing and medical records from August 2016 through August 2019. *Id.* at 25–26. He stated that Feliz "has had very conservative and limited care for her physical impairments and mental health records suggest a positive response to therapy, all of which fails to support the claimant's allegations of impairments that would preclude vocational activities." *Id.* at 25. Finally, the ALJ provided an

analysis of the physicians he found persuasive, those he found to be unpersuasive, and why. *Id.* at 26–28.

At step four, the ALJ concluded that Feliz was "unable to perform any past relevant work." *Id.* at 28. Finally, at step five, considering Feliz's "age, education, work experience, and residual functional capacity," the ALJ concluded that there are "jobs that exist in significant numbers in the national economy" that Feliz could perform — specifically, the jobs of inspector and hand packager, collator operator, and photo copy machine operator. *Id.* at 29. Accordingly, the ALJ determined that "a finding of 'not disabled' [was] appropriate." *Id.* at 30.

## II. DISCUSSION

### A. Legal Standards

#### 1. Judicial Review of the Commissioner's Decision

An individual may obtain judicial review of a final decision of the Commissioner "in the district court of the United States for the judicial district in which the plaintiff resides." 42 U.S.C. § 405(g). The district court must determine whether the Commissioner's final decision applied the correct legal standards and whether the decision is supported by "substantial evidence." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks and alterations omitted); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)

("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations . . . whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938))).

The substantial evidence standard is a "very deferential standard of review." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). The Court "must be careful not to substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a *de novo* review." *DeJesus v. Astrue*, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011) (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)) (internal quotation marks and alterations omitted). "[O]nce an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis omitted).

In weighing whether substantial evidence exists to support the Commissioner's decision, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian*, 708 F.3d at 417 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983)). On the basis of this review, the court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without

remanding . . . for a rehearing." 42 U.S.C. § 405(g). However, "[w]hen there are gaps in the administrative record or the ALJ has applied an improper legal standard, [the court has], on numerous occasions, remanded to the [Commissioner] for further development of the evidence." *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)) (alteration in original).

### 2. Commissioner's Determination of Disability

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); *see also Colgan v. Kijakazi*, 22 F.4th 353, 357 (2d Cir. 2022). Physical or mental impairments must be "of such severity that [the claimant] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In assessing a claimant's impairments and determining whether they meet the statutory definition of disability, the Commissioner "must make a thorough inquiry into the claimant's condition and must be mindful that 'the Social Security Act is a remedial statute, to be broadly construed and liberally applied.'" *Mongeur*, 722 F.2d at 1037 (quoting *Gold v. Sec'y of Health, Educ., & Welfare*, 463 F.2d 38, 41

13

(2d Cir. 1972)).  Specifically, the Commissioner's decision must consider factors such as: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience."  *Id.* (internal citations omitted).

### a. Five-Step Inquiry

"The Social Security Administration has outlined a 'five-step, sequential evaluation process' to determine whether a claimant is disabled[.]"  *Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019) (citations omitted); 20 C.F.R. § 404.1520(a)(4).  First, the Commissioner must establish whether the claimant is presently employed.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is unemployed, the Commissioner goes to the second step and determines whether the claimant has a "severe" impairment restricting his or her ability to work.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant has such an impairment, the Commissioner moves to the third step and considers whether the medical severity of the impairment "meets or equals" a listing in Appendix One of Subpart P of the regulations.  20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is considered disabled.  *Id.*; 20 C.F.R. § 404.1520(d).

If the claimant alleges a mental impairment, "the regulations further require that the [Commissioner] 'rate the degree of [the claimant's] functional limitation based on the extent to which [her] impairment(s) interferes with [her] ability to function independently, appropriately, effectively, and on a sustained basis.'"

*Rosario v. Kijakazi*, No. 20-CV-5490 (JPC) (BCM), 2022 WL 875925, at *11

(S.D.N.Y. Mar. 15, 2022) (quoting 20 C.F.R. § 404.1520a(c)(2)), *adopted by* 2022 WL

976879 (Mar. 31, 2022) (alterations in original).  "The degree of functional

limitation is rated in 'four broad functional areas,' including the claimant's ability to

'[u]nderstand, remember, or apply information; interact with others; concentrate,

persist, or maintain pace; and adapt or manage oneself.'"  *Id.* (quoting 20 C.F.R. §

404.1520a(c)(3)).  The Commissioner uses a five-point scale to determine the degree

of limitation in each area:  none, mild, moderate, marked, and extreme.  *See* 20

C.F.R. § 404.1520a(c)(4).  "These ratings are used both at step two, to determine

whether a mental impairment is 'severe,' and at step three, to determine whether a

severe mental impairment meets or medically equals a listed impairment."  *Rosario*,

2022 WL 875925, at *11.

      If the claimant's impairment does not meet or equal a listed impairment,

then the Commissioner continues to the fourth step and determines whether the

claimant has the RFC to perform his or her past relevant work.  20 C.F.R. §

404.1520(a)(4)(iv).  Finally, if the claimant does not have the RFC to perform past

relevant work, the Commissioner completes the fifth step and ascertains whether

the claimant possesses the ability to perform any other work.  20 C.F.R. §

404.1520(a)(4)(v).

      The claimant has the burden at the first four steps.  *Burgess v. Astrue*, 537

F.3d 117, 128 (2d Cir. 2008).  If the claimant is successful, the burden shifts to the

Commissioner at the fifth and final step, where the Commissioner must establish

that the claimant has the ability to perform some work in the national economy. *See, e.g., Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

### b. Duty to Develop the Record

"Social Security proceedings are inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000). Consequently, "the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). As part of this duty, the ALJ must "investigate the facts and develop the arguments both for and against granting benefits." *Sims*, 530 U.S. at 111. Specifically, under the applicable regulations, the ALJ is required to develop a claimant's complete medical history. 20 C.F.R. § 404.1512(b); *see also Pratts,* 94 F. 3d at 37. This responsibility "encompasses not only the duty to obtain a claimant's medical records and reports but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity." *Pena v. Astrue*, No. 07-CV-11099 (GWG), 2008 WL 5111317, at *8 (S.D.N.Y. Dec. 3, 2008) (internal citations omitted).

Whether the ALJ has satisfied this duty to develop the record is a threshold question. Before determining whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C. § 405(g), "the court must first be satisfied that the ALJ provided plaintiff with 'a full hearing under the Secretary's regulations' and also fully and completely developed the administrative

record." *Scott v. Astrue*, No. 09-CV-3999 (KAM) (RLM), 2010 WL 2736879, at *12

(E.D.N.Y. July 9, 2010) (quoting *Echevarria v. Sec'y of Health & Human Servs.*, 685

F.2d 751, 755 (2d Cir. 1982)); *see also Rodriguez ex rel. Silverio v. Barnhart*, No. 02-

CV-5782 (FB), 2003 WL 22709204, at *3 (E.D.N.Y. Nov. 7, 2003) ("The

responsibility of an ALJ to fully develop the record is a bedrock principle of Social

Security law." (citing *Brown v. Apfel*, 174 F.3d 59 (2d Cir. 1999))).  The ALJ must

develop the record even where the claimant has legal counsel.  *See, e.g., Perez v.

Chater*, 77 F.3d 41, 47 (2d Cir. 1996).  Remand is appropriate where this duty is not

discharged.  *See, e.g., Moran*, 569 F.3d at 114–15 ("We vacate not because the ALJ's

decision was not supported by substantial evidence but because the ALJ should

have developed a more comprehensive record before making his decision.").

### c. Evaluation of Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in

determining whether a claimant is disabled under the [Social Security] Act." *Pena

ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y.

Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)) (internal quotation

marks omitted).  For SSI and Social Security Disability Insurance applications filed

prior to March 27, 2017, SSA regulations set forth the "treating physician rule,"

which required an ALJ to give more weight to the opinions of physicians with the

most significant clinical relationship with the plaintiff.  20 C.F.R. §§ 404.1527(c)(2);

416.927(d)(2); *see also, e.g., Taylor v. Barnhart*, 117 F. App'x 139, 140 (2d Cir.

2004).  Under the treating physician rule, an ALJ was required to give "good

reasons," 20 C.F.R. § 404.1527(c)(2), if she determined that a treating physician's
opinion was not entitled to "controlling weight," or at least "more weight," than the
opinions of non-treating and non-examining sources. *Gonzalez v. Apfel*, 113 F.
Supp. 2d 580, 588 (S.D.N.Y. 2000). In addition, a consultative physician's opinion
was generally entitled to "little weight." *Giddings v. Astrue*, 333 F. App'x 649, 652
(2d Cir. 2009).

However, in January 2017, the SSA revised its regulations regarding the
evaluation of medical opinions for claims filed on or after March 27, 2017 (such as
Feliz's claim in this case). *See* REVISIONS TO THE RULES REGARDING THE EVALUATION
OF MEDICAL EVIDENCE, 82 Fed. Reg. 5844, 5869–70 (Jan. 18, 2017). "In
implementing new regulations, the SSA has apparently sought to move away from a
perceived hierarchy of medical sources." *Velasquez v. Kijakazi*, 19-CV-9303 (DF)
2021 WL 4392986, at *19 (S.D.N.Y. Sept. 24, 2021) (citing 82 Fed. Reg. 5844). The
new regulations state that an ALJ need "not defer or give any specific evidentiary
weight, including controlling weight, to any medical opinion(s) or prior
administrative medical finding(s), including those from [a claimant's] medical
sources." *Id.* (quoting 20 C.F.R. §§ 404.1520c(a), 416.1520c(a)). "Instead, an ALJ is
to consider all medical opinions in the record and 'evaluate their persuasiveness'
based on the following five 'factors': (1) supportability, (2) consistency, (3)
relationship with the claimant, (4) specialization, and (5) any 'other' factor that
'tend[s] to support or contradict a medical opinion.'" *Id.* (quoting 20 C.F.R. §§
404.1520c(a)–(c), 416 920c(a)–(c)).

18

Notwithstanding the requirement to "consider" all of these factors, the ALJ's duty to articulate a rationale for each factor varies. 20 C.F.R. §§ 404.1520c(a)–(b), 416 920c(a)–(b). Under the new regulations, the ALJ must "explain how he considered" both the supportability and consistency factors, as they are "the most important factors." 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2); *see also, e.g., Russ v. Comm'r of Soc. Sec.*, No. 20-CV-6389 (RWL), 2022 WL 278657, at *6 (S.D.N.Y. Jan. 31, 2022) ("[t]he new regulations give most importance to two of the same factors previously considered to determine whether a treating doctor's opinion should be given controlling weight," referring to the supportability and consistency factors). Evaluating "supportability is an inquiry geared toward assessing how well a medical source supported and explained their opinion(s)." *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-502 (KMW) (KHP), 2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021) *adopted by*, 2022 WL 717612 (Mar. 10, 2022). With regard to consistency, "the new rules provide that the greater the consistency between a particular medical source/opinion and the other evidence in the medical record, the stronger that medical opinion becomes." *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(3)); *see generally* 42 U.S.C. § 423(d)(5)(B) (requiring ALJ to base decision on "all the evidence available in the [record]").

In addition, under the new regulations, the ALJ is required to consider, but need not explicitly discuss, the three remaining factors (relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion). *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "[W]hen the

opinions offered by two or more medical sources about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, the ALJ [should] articulate how he considered the remaining factors in evaluating the opinions." *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021) (citing 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3)) (internal quotations removed).

Courts considering the application of the new regulations have concluded that "the factors are very similar to the analysis under the old [treating physician] rule." *Velasquez*, 2021 WL 4392986, at *20 (quoting *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 885 (D. Vt. 2021)); *see also Acosta Cuevas*, 2021 WL 363682, at *9 (collecting cases) ("the essence of the rule remains the same, and the factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar"). "This is not surprising considering that, under the old rule, an ALJ had to determine whether a treating physician's opinion was *supported* by well-accepted medical evidence and *not inconsistent* with the rest of the record before controlling weight could be assigned." *Acosta Cuevas*, 2021 WL 363682, at *9; *see also, e.g., Andrew G. v. Comm'r of Soc. Sec.*, No. 19-CV-942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) ("consistency and supportability" were foundation of treating physician rule).

"The failure to properly consider and apply" supportability and consistency "is grounds for remand." *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *9 (S.D.N.Y. Aug. 6, 2021); *see also Rosario v. Comm'r of Soc. Sec.*,

No. 20-CV-7749 (SLC), 2022 WL 819910, at *8 (S.D.N.Y. Mar. 18, 2022) ("ALJ must

explain in all cases how [he or she] considered" supportability and consistency);

*Rivera v. Comm'r of Soc. Sec.,* No. 19-CV-4630 (LJL) (BCM), 2020 WL 8167136, at

*22 (S.D.N.Y. Dec. 30, 2020), *adopted by*, 2021 WL 134945 (Jan. 14, 2021)

(remanding so  ALJ can "explicitly discuss both the supportability and consistency

of the consulting examiners' opinions").  "An ALJ's failure to apply the correct legal

standard constitutes reversible error if that failure might have affected the

disposition of the case." *Lopez v. Berryhill*, 448 F. Supp. 3d 328, 341 (S.D.N.Y. 2020)

(citing *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)).  However, the Court need

not remand the case if the ALJ only committed harmless error*, i.e.*, where the

"application of the correct legal principles to the record could lead only to the same

conclusion." *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (alteration omitted)

(citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

### d.  Claimant's Credibility

An ALJ's credibility finding as to the claimant's disability is entitled to

deference by a reviewing court.  *Osorio v. Barnhart*, No. 04-CV-7515 (DLC), 2006

WL 1464193, at *6 (S.D.N.Y. May 30, 2006).  "[A]s with any finding of fact, '[i]f the

Secretary's findings are supported by substantial evidence, the court must uphold

the ALJ's decision to discount a claimant's subjective complaints." *Id.* (quoting

*Aponte v. Sec'y of Health and Hum. Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)).  Still,

an ALJ's finding of credibility "must . . . be set forth with sufficient specificity to

permit intelligible plenary review of the record." *Pena*, 2008 WL 5111317, at *10

(internal quotation marks omitted) (quoting *Williams v. Bowen*, 859 F.2d 255, 260–61 (2d Cir. 1988)).  "The ALJ must make this [credibility] determination 'in light of the objective medical evidence and other evidence regarding the true extent of the alleged symptoms.'"  *Id.* (*quoting Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir. 1984)).

SSA regulations provide that statements of subjective pain and other symptoms alone cannot establish a disability.  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(a)).  The ALJ must follow a two-step framework for evaluating allegations of pain and other limitations.  *Id.*  First, the ALJ considers whether the claimant suffers from a "medically determinable impairment that could reasonably be expected to produce" the symptoms alleged.  *Id.* (citing 20 C.F.R. § 404.1529(b)).  "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record."  *Id.* (citing 20 C.F.R. § 404.1529(a)).  Among the kinds of evidence that the ALJ must consider (in addition to objective medical evidence) are:

> 1. Daily activities; 2. [t]he location, duration, frequency, and intensity of pain or other symptoms; 3. [f]actors that precipitate and aggravate the symptoms; 4. [t]he type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5. [t]reatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6. [a]ny measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for

15 to 20 minutes every hour, or sleeping on a board); and
7. [a]ny other factors concerning an individual's functional
limitations and restrictions due to pain or other
symptoms.

Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *7–8 (S.S.A. Oct. 25,

2017); *see also Pena*, 2008 WL 5111317, at *11.

### B. Analysis

Feliz argues that this case should be remanded because: (1) the ALJ's

findings support a decision that she is disabled; (2) the ALJ failed to properly

consider the opinions of her treating physician and psychiatrist; (3) the ALJ failed

to consider the potential for monthly absences; and (4) the ALJ did not properly

consider the Paragraph "B" criteria of Listing 12.04.  Pl. Mem. at 18–19, 26–27.  The

Commissioner responds that substantial evidence supports the ALJ's RFC

determination, and his finding that Feliz is able to perform work that exists in the

national economy.  Def. Mem. at 18, 25.  For the reasons that follow, the Court

concludes that (1) the ALJ's RFC determination was not supported by substantial

evidence, and (2) any errors made by the ALJ were not harmless.[3]

### 1. The ALJ's RFC Determination Was Not Supported by Substantial Evidence Because He Did Not Properly Assess the Medical Opinions in the Record

The ALJ did not properly assess the medical opinions in the record and so his

RFC determination was not based on substantial evidence.  As discussed above,

---

[3] Accordingly, because it remands on these grounds, the Court does not reach the
other arguments advanced by the parties.

23

"substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian,* 708 F.3d at 417 (quotation omitted).  A reasonable mind must be able to "glean the rationale of an ALJ's decision."  *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013).  Although the Court may defer to an ALJ's explanation and analysis of differing medical opinions, *see, e.g.*, *Smith v. Berryhill*, 740 F. App'x 721, 725 (2d Cir. 2018), in the event that the ALJ is confronted with differing medical opinions, under the new regulations the ALJ should "consider all medical opinions in the record and evaluate their persuasiveness based on the following five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) any other factor that tend[s] to support or contradict a medical opinion," with supportability and consistency being the two most important factors. *Velasquez*, 2021 WL 4392986, at *19 (internal quotation marks and citations omitted).  Here, the ALJ did not properly consider all medical opinions in the record, particularly with regard to their supportability and consistency.

Courts have commonly remanded cases "where the evidence supporting or consistent with a rejected medical opinion was ignored or mischaracterized."  *Id.* at *27 (collecting cases).  While ALJs do not have to consider and reconcile each piece of evidence, they should provide adequate reasoning for their rejection of volumes of medical evidence in a claimant's favor.  *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983) ("Although we do not require that, in rejecting a claim of disability, an ALJ must reconcile explicitly every conflicting shred of medical testimony, we

cannot accept an unreasoned rejection of all the medical evidence in a claimant's favor.") (cleaned up).

In Feliz's case, the ALJ considered the opinions of seven medical sources in his decision.  AR at 26–28.  These included: Dr. Ali Islam, Feliz's primary care physician; Dr. Raquel Choua, her treating psychiatrist; Dr. Rita Figueroa, an internal medicine consultative examiner; Dr. Toula Georgiou, a psychiatric consultative examiner;[4] Dr. Arnold Ostrow, an impartial medical expert who testified at the hearing; and Dr. M. Juriga and Dr. A. Periakaruppan, state agency medical consultants.[5]  *Id.*  As discussed further below, the ALJ erroneously discounted the opinions of Dr. Islam and Dr. Figueroa based upon the conservative treatment they prescribed to Feliz, failed to consider whether there was adequate evidence consistent with and supporting Dr. Ostrow's opinion (on which the ALJ ultimately relied), and improperly discounted or failed to acknowledge the opinions of Dr. Choua and Dr. Georgiou.

### a.  The ALJ Improperly Relied on Conservative Treatment Prescribed to Feliz

The ALJ incorrectly discounted the opinions of Dr. Islam and Dr. Figueroa due to their conservative treatment of Feliz.  *Id.* at 26–27.  An ALJ is entitled to consider conservative treatment prescribed to a claimant as one factor in determining credibility of both medical opinions and a claimant's subjective claims. *See, e.g., Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2014); *Penfield v. Colvin*, 563

---

[4] The ALJ mistakenly refers to Dr. Toula Georgiou as "Dr. Georgia."  AR at 27.
[5] Dr. Jurgia's and Dr. Periakaruppan's first names do not appear in the record.

F. App'x 839, 840 (2d Cir. 2014); *Rivera v. Colvin*, No. 14-CV-00816 (MAT), 2015

WL 6142860, at *6 (W.D.N.Y. Oct. 19, 2015).  However, conservative treatment

should be cited "merely as additional evidence supporting the ALJ's determination

rather than as 'compelling' evidence sufficient in itself to overcome an "otherwise

valid medical opinion."  *Netter*, 272 F. App'x at 56.  Additionally, "the Second Circuit

has cautioned against discounting the opinion of a treating physician merely

because the physician recommended a conservative treatment regimen."  *Cohen-*

*Aikens v. Saul*, 19-CV-4443 (SDA), 2020 WL 3126172, at *12 (S.D.N.Y. Jun. 13,

2020) (quoting *Perez v. Berryhill*, No. 17-CV-00055 (JAM), 2018 WL 525993, at *4

(D. Conn. Jan. 24, 2018)).  A plaintiff should similarly not be penalized for her

decision to pursue a conservative course of treatment.  *Perez*, 2018 WL 525993, at

*5.

The only reason the ALJ provided for finding Dr. Islam's opinions to be "less

persuasive" was "the limitations offered [by Dr. Islam] are not supported by the

limited and conservative care that includes essentially pain medications with a

recent referral for physical therapy and no invasive orthopedic surgical procedures."

AR at 26.  The limitations offered by Dr. Islam included that Feliz could sit, stand,

or walk for 15 minutes before needing to alternate positions; sit, stand, or walk for

two hours in an eight-hour workday; lift and carry up to five pounds occasionally;

never balance or stoop; could occasionally reach, handle, and finger with her right

hand; and that Feliz would be absent more than three times a month due to her

impairments.  *Id*. at 697-701.  The ALJ's reasoning conflicts with numerous visits

to, and notes by, other providers in the record, which support Dr. Islam's opinions.
*See, e.g., id.* at 355–57, 360–61, 371–81. For example, in August 2016, Feliz
received a steroid injection into the median branch nerve L5-S1 to help alleviate
severe pain. *Id.* at 355–57. In April 2018, she was referred to an orthopedic
surgeon for her back, attended regular physical therapy, and was noted by the
physical therapist to have difficulty in walking more than three blocks, climbing
more than one or two flights of stairs, sitting more than 30 minutes, and standing
more than 20 to 30 minutes. *Id.* at 377–79. In addition, from March 2018 through
May 2019, Feliz attended a pain management clinic, which treated her for low back
pain, other chronic pain, pain in right knee, pain in left knee, right shoulder pain,
and right elbow pain. *Id.* at 371–93, 524–26, 529–31, 539–41, 545–47, 551–53, 554–
56. She was repeatedly prescribed numerous medications to help manage the pain,
including gabapentin, tramadol, ibuprofen, cyclobenzaprine, and percocet in
addition to a back brace and physical therapy. *Id.* at 524–26, 529–31, 539–41, 545–
47, 551–53, 554–56.[6] While the ALJ summarized these visits in his decision, he did
not consider whether or not they established supportability and consistency for Dr.
Islam's opinion, as they appear to do. *Id.* at 25–26. Additionally, at her hearing,
Feliz testified that she intends to have surgery on her knee, a fact the ALJ did not
account for in his decision. *Id.* at 47. *See, e.g., Shaw v. Carter*, 221 F.3d 126, 134–
35 (2d Cir. 2000) (ALJs cannot impose "their notion that the severity of a physical

---

[6] Because most of these treatments are prescription strength medications prescribed
to Feliz by doctors, without further explanation from the ALJ, it is unclear why the
prescription of these medications does not support Dr. Islam's limitations.

impairment directly correlates with the intrusiveness of the medical treatment ordered").

Similarly, the only explanation the ALJ offered as to why he found Dr. Figueroa's opinion to be "less persuasive" was that "while the opinion offered [was] generally consistent with the limitations in motion displayed," such as Feliz's limitations in her lumbar range of motion and limitations in her shoulder and hip ranges of motion, "conservative treatment records suggest less significant exertional limitations." *Id.* at 27. Dr. Figueroa opined that Feliz had moderate limitations for prolonged walking, sitting, and standing with marked limitation to receptive bending, lifting, and carrying. *Id.* at 512. Dr. Figueroa performed Feliz's examination as a consultative examiner on behalf of the Division of Disability Determination and did not prescribe treatment of any kind. *Id.* at 508–12. Thus, the ALJ looked to the conservative treatment prescribed by other doctors to discount Dr. Figueroa's opinion. But as noted, conservative treatment is not "compelling evidence" that can be used to discount an "otherwise valid medical opinion." *Netter,* 272 F. App'x at 56. The ALJ did not provide any other explanation as to why Dr. Figueroa's medical opinion should be discounted. Thus, the ALJ failed to "analyze fully the supportability and consistency" of Dr. Figueroa's opinion.

### b. The ALJ Failed to Consider the Supportability or Consistency of Dr. Ostrow's Opinion

The ALJ's RFC determination predominantly relied on (and reflects the opinion provided by) Dr. Ostrow's testimony at the hearing. AR at 39–46. However, "the medical opinion of a non-examining medical expert does not constitute

substantial evidence and may not be accorded significant weight." *Commisso v. Comm'r of Soc. Sec.*, No. 20-CV-4872 (PKC), 2022 WL 742871, at *8 (E.D.N.Y. Mar. 11, 2022) (quoting *Roman v. Astrue,* No. 10-CV-3085 (SLT), 2012 WL 4566128, at *16 (E.D.N.Y. Sept. 28, 2012)).  In his decision, the ALJ found Dr. Ostrow's testimony to be "persuasive" and adopted it almost exactly in his RFC determination.  AR at 24, 28.

The ALJ failed to explain, nor can it be found within the record, which specific medical records Dr. Ostrow relied on to support his own RFC or his opinion that none of Feliz's impairments met or equaled any of the listings.[7]  Dr. Ostrow testified that his opinion was based on a consideration of the "objective medical records," but he did not specify which records.  *Id.* at 42.  He also testified that he "saw no evidence to support [the examining physicians'] conclusions."  *Id.*  The ALJ did not explain, as the new regulations require, what Dr. Ostrow used to support his ultimate conclusion, other than stating that it was "consistent with the conservative treatment received by [Feliz], which included pain medications and physical therapy."  *Id.* at 28.  Nor did the ALJ specifically analyze Dr. Ostrow's opinion against other medical evidence in the record to evaluate its consistency. The medical opinions that appear to provide support for Dr. Ostrow's findings are the evaluations provided by state agency medical consultants Dr. Periakaruppan and Dr. Juriga.  *Id.* at 66–79.  Dr. Periakaruppan opined that Feliz had the RFC to

---

[7] Dr. Ostrow's testimony is described in greater detail in Section I(A)(3), *supra* at 4–5.

perform light work, occasionally lifting/carrying 20 pounds, frequently lifting/carrying 10 pounds, standing/walking and sitting for six hours in an eight-hour workday, and occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps, stairs, ladders, ropes, or scaffolds. *Id.* at 73–74. However, Dr. Periakaruppan, like Dr. Ostrow, did not examine Feliz in person. *Id.* Further, the ALJ did not appear to evaluate the validity of Dr. Periakaruppan's report. *Id.* at 28. The fact that neither Dr. Ostrow nor Dr. Periakaruppan examined Feliz in person should have factored into the ALJ's analysis, but it did not. *See, e.g., Anderson v. Kijakazi*, No. 20-CV-6462 (JPO) (OTW), 2022 WL 938115, at *6 (S.D.N.Y. Mar. 3, 2022) ("the general rule in the Second Circuit is that 'the written reports of medical advisers who have not personally examined the claimant deserve little weight in the overall evaluation of disability'") (quoting *Vargas v. Sullivan*, 898 F.2d 293, at 295–96 (2d Cir. 1990)), *adopted by*, 2022 WL 925070 (Mar. 29, 2022).

Dr. Juriga provided a mental RFC assessment that suggested "moderate nonexertional mental limitations." AR at 28, 74–77. The ALJ found Dr. Juriga's opinion to be "consistent with the medical record as a whole, including the relatively conservative and limited care, which included some pain medications, mental health therapy and psychotropic medication." *Id.* at 28. Without more specificity as to them from the ALJ, the opinions of non-examining physicians that are merely based on the findings of examining doctors should not be afforded significant

weight.  *See, e.g., Commisso*, 2022 WL 742871, at *8; *Anderson*, 2022 WL 938115, at *6.

In viewing the record as a whole, Dr. Ostrow's opinion lacks supportability and consistency, particularly with respect to the opinion of each of Feliz's examining doctors.  For instance, Dr. Islam opined in his medical report that Feliz could lift and carry up to five pounds occasionally, could not balance or stoop, that Feliz required a cane to aid in both walking and standing, and she only could stand or walk about continuously at 15 minute intervals, with 15 minute breaks to sit in between.  AR at 697–99.  Dr. Islam opined that cumulatively Feliz could stand or walk about for a total of two hours in an eight-hour day.  *Id.* at 698.  Dr. Figueroa opined that Feliz had moderate limitations for prolonged walking, sitting, and standing, and marked limitation to receptive bending, lifting, and carrying.  *Id.* at 512.  Dr. Georgiou opined that Feliz might "have difficulties regulating her emotions," and "that the evaluation was consistent with psychiatric and cognitive problems, which might significantly interfere with [her] ability to function on a daily basis."  *Id.* at 507.  In contrast, Dr. Ostrow testified that he believed Feliz could "stand and walk for six hours in an eight-hour day," and also "sit for six hours in an eight-hour day."  *Id.* at 43.  Therefore, the other medical opinions in the record are both inconsistent with the opinion of Dr. Ostrow and exhibit a lack of support for his opinion.

### c. The ALJ's Assessment of the Opinions of Dr. Choua and Dr. Georgiou Was Inadequate

The ALJ also failed to adequately assess the opinions provided by Dr. Choua and Dr. Georgiou. In her Medical Source Statement, Dr. Choua opined that Feliz had extreme limitations in performing daily activities; maintaining social functioning; concentration, persistence, or pace; and repeated episodes of deterioration or decompensation in work. *Id.* at 695. Additionally, Dr. Choua opined that Feliz would be absent from work more than three times a month. *Id.* at 693. The ALJ found Dr. Choua's opinion to be "unpersuasive" because it was "in stark contrast to treatment records that include essentially normal mental status exams with some anxious moods, references that the claimant takes walks, cleans her house and helps her children with homework to reduce anxiety." *Id.* at 26. The ALJ's characterization of Feliz's mental status exams as normal with some anxious moods is supported by the record because Dr. Choua's treatment records, and the record as a whole, do not provide support for the extreme limitations offered in Dr. Choua's Medical Source Statement. *Id.* at 692–95 (Medical Source Statement); *Id.* at 477, 481–82, 483–85, 491, 497, 500, 502–04, 624–33 (Dr. Choua's treatment records).

However, the ALJ incorrectly cites to Feliz's performance of daily activities as evidence of her ability to manage and reduce her anxiety, and therefore as a means to discount Dr. Choua's opinion. An ALJ is permitted to consider daily activities "in evaluating the intensity and persistence of a claimant's symptoms." 20 C.F.R. § 416.929(c)(3)(i). Where a claimant's report of daily activities supports a finding that

32

she is capable of a higher degree of exertional activity than stated by her subjective statements, the ALJ is permitted to consider this finding in his RFC determination. *See, e.g., Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020) (record showing claimant who regularly engaged in activities including tasks such as "cooking, cleaning, self-care, banking, shopping and driving without assistance" supported ALJ's finding that treating physician's assessment of limitations was unsupported); *Cichocki,* 729 F.3d at 178 (claimant's daily activities consistent with residual capacity to perform light work).  However, "it is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, 'as people should not be penalized for enduring the pain of their disability in order to care for themselves.'" *Cabibi v. Colvin*, 50 F. Supp. 3d 213, 238 (E.D.N.Y. 2014) (citations omitted).  Additionally, a claimant's performance of basic daily activities does not provide a complete understanding of her ability to perform work in a restrictive environment.  *Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000).

The ALJ's citation to Feliz's ability to take walks, clean her house, and help her children with homework does not demonstrate the type of exertional activity substantial enough to wholly discount Dr. Choua's opinion, nor discredit a finding of disability.  *See id.* (ALJ erred "when he concluded [claimant] could perform sedentary work" only "because she testified that she cooked and shopped for herself, and used public transportation") (citation omitted).  In addition, Feliz stated that her children are the ones who care for the home and that her sons are the ones who

cook meals, clean, do laundry, assist with shopping, and money management. AR at 271–73. The ALJ does not appear to have factored this testimony into his analysis.

Moreover, the ALJ failed to evaluate the opinion of Dr. Georgiou. Following a consultative examination, Dr. Georgiou opined that Feliz might have difficulties regulating her emotions and that the evaluation was consistent with psychiatric and cognitive problems, which might significantly interfere with Feliz's ability to function on a daily basis. *Id.* at 507. While her opinion might ultimately not support a finding of disability, it does appear to be consistent with Feliz's subjective statements regarding the intensity and persistence of her symptoms. *Id.* at 54–56, 403–09, 414–16, 425–27. At a minimum, the ALJ needed to explain why this opinion was not afforded any weight, and he did not.

### 2. The ALJ's Errors Were Not Harmless

#### a.  Consideration of Feliz's Examining Doctors

The ALJ's failure to properly evaluate the medical evidence was not harmless. Had the ALJ given more credit to the opinions of Dr. Islam and Dr. Figueroa in his RFC determination, the RFC might have been more restrictive with regard to Feliz's ability to sit, stand, walk, lift, and carry. This potentially different RFC is significant because when questioned by Feliz's attorney, the VE testified that a person who is unable to bend, lift, or carry for one-third of the day, and who could not walk, sit, or stand for two hours out of an eight-hour day would be precluded from full-time competitive employment. *Id.* at 62–65. Additionally, when

questioned about whether a person who had to alternate positions every 15 minutes, take rest breaks every two hours, and had limitations that prevented them from ever being able to stoop or balance would be able to perform full-time competitive employment, the VE testified that a person who is off task more than 10 percent of the time on a consistent basis would be precluded from full-time competitive employment. *See, e.g., Pines v. Comm'r of Soc. Sec.*, No. 13-CV-6850 (AJN) (FM), 2015 WL 872105, at *10 (S.D.N.Y. Mar. 2, 2015) (internal quotation marks and citation omitted) (ALJ's analysis of treating physician's opinion was not harmless error because vocational expert "essentially testified that if these opinions were adopted, [the claimant] would be unable to work"), *adopted sub nom. Pines v. Colvin*, 2015 WL 1381524 (Mar. 25, 2015).

Furthermore, a proper evaluation of the medical opinions could materially change the ALJ's analysis of the "paragraph B" criteria. For example, had the ALJ credited Dr. Choua's opinion, even if not to the degree of extreme limitations in all the categories she provided, the ALJ could have found that Feliz had marked or extreme limitations in understanding, remembering, or applying information, interacting with others, or concentrating, persisting or maintaining pace. Accordingly, the ALJ's failure to properly evaluate the medical evidence, particularly the findings of Dr. Islam, Dr. Figueroa, and Dr. Georgiou, was not harmless.

### b. Consideration of Monthly Absences

Finally, both Dr. Islam and Dr. Choua opined that Feliz's impairments would cause her to be absent from work "more than 3 times a month." AR at 693, 701. The VE testified that if a person was absent two days per month it would not be tolerated, and therefore that person would be precluded from full-time competitive employment. *Id.* at 65. Notably, if he had determined the opinions of Dr. Islam and Dr. Choua to be persuasive and credited their assessments in his RFC determination, the ALJ would have found that Feliz was incapable of maintaining full-time competitive employment and that there were no jobs in the national economy that Feliz could perform. *See, e.g., Pines*, 2015 WL 872105, at *10.

## III. CONCLUSION

For the foregoing reasons, Feliz's motion is granted, the Commissioner's cross-motion is denied, and the case is remanded pursuant to sentence four of 42 U.S.C. § 405(g).

**SO ORDERED.**

Dated: July 22, 2022
    New York, New York

_____
JAMES L. COTT
United States Magistrate Judge